UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TYRONE JACKSON, JR.                           CIVIL ACTION

VERSUS                                        NO. 15-244

MARLIN N. GUSMAN ET AL.                       SECTION "C" (2)

## REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff, Tyrone Jackson, Jr., was a prisoner incarcerated in the Orleans Parish Prison system ("OPP").  He is currently being held in the Dixon Correctional Institute.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman, Bonita J. Pittman, Sgt. Weaver, Mr. Lopez, Ms. Fair, Ms. Clayton, Sgt. West, Sgt. Gibson, Sgt. Dorsey and Sgt. Jimison.  Jackson alleges that while incarcerated in OPP, he was subjected to various unconstitutional conditions of confinement. He seeks "compensatory/injunctive relief."  Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On May 14, 2015, I conducted a telephone conference in this matter.  Participating were plaintiff pro se; Charlin Fisher, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Jackson testified that he is currently incarcerated in Dixon based upon a January 27, 2015, conviction for possession of crack cocaine and heroin, for which he is serving a 15-year prison sentence. He confirmed that the claims he makes in this case all relate to the conditions of his confinement for part of the time he spent in OPP, where he was incarcerated for about eight months beginning on June 20, 2014. Jackson stated that during his stay in OPP, he was kept in its Templeman 5 unit and then transferred to the Conchetta unit. He stated that his claims in this case are limited only to the Conchetta unit of OPP, where he was housed for a little more than three months from October 30, 2014 to February 8, 2015.

As to the specific living conditions about which he complains in this case, Jackson testified that they included mold in the showers and on the wall where his bed was located, flood water overflowing "from upstairs to downstairs" and spoiled food. He also complained that proper cleaning supplies were only issued when an inspection was scheduled to occur.

As to mold, Jackson stated that "it was there every day; when you try to clean it, it comes right back." He testified that he and other inmates tried to clean the mold with soap and a rag and "wipe the walls down and . . . keep the shower clean [but] it comes right back from not being sanitized and not having no proper cleaning supplies to stop it from building up." He said inmates tried to clean away the mold this way two or three

times a week, but without the proper cleaning materials they were unable to get rid of it.

He said sheriff's office employees never tried to clean it and although "yanks" – inmates

assigned to cleaning and food serving duties – were assigned to his Conchetta unit, they

did not hand out cleaning materials for the shower during the three months he was

housed in the facility.

Jackson testified that he suffered headaches and chest pains as a result of the

unsanitary conditions.  He stated that he had not received copies of his medical records

that I ordered the sheriff's office to provide to him.  Record Doc. Nos. 7 and 29.  He

testified that he had submitted requests for medical services concerning these conditions,

but the nurses would not see him "till probably three or four days later."  He stated that

he saw a nurse once or twice about his problems, but the nurse did nothing about them.

Told that his medical records reflect no treatment for headaches or chest pains but only

for his mental conditions and substance abuse problems, Jackson confirmed that

headaches and chest pains were the only physical problems he experienced as a result of

his exposure to mold, but he later added that his medical problems resulting from

exposure to mold included a stuffy nose for which he received no medical treatment.

As to the flooding from the floor above him while in the jail, Jackson stated that

it occurred about four times "when the juveniles upstairs" would purposely overflow the

toilets in their holding area on the second floor above him. He testified that juvenile

inmates held upstairs at Conchetta would intentionally cause the toilet water to overflow

whenever they were dissatisfied about being locked down.  Jackson stated that inmates in his area would clean up the overflow when it occurred, but it caused him to be exposed to toilet water and bad odors.  Asked if he suffered any harm from these toilet overflows, he said, "No."

Concerning his complaints about spoiled food, Jackson alleged that he was served spoiled food, particularly oatmeal for breakfast, about five times a week, and that when he complained that the food was spoiled, he was told that the food was not spoiled.  He said that he would ask for salt and was told that the food was not spoiled and that he was actually not eating it because it was unsalted.  Jackson said when he complained a jail employee would come out of the kitchen to tell him the food was not spoiled and he could either eat it or not. Jackson said he could tell that the food was spoiled "because it had bubbles in it and . . . a tangy taste."  He testified that in addition to spoiled oatmeal, he also received spoiled red beans and rice and gravy, which he could tell was spoiled from the taste and the smell.  He alleged that the food was "just outrageous . . . the same food every day; when it came in, it was just sour."

Asked if there were any other unsanitary conditions in the jail, he said "no."  He explained that the inmates received proper cleaning supplies, like bleach and proper scrubbing materials, only once a month when inspections were scheduled.  He said that once the inmates determined that proper cleaning supplies were only being provided on

inspection days, they stopped using them and resorted instead to using Ivory soap and a rag to clean the walls.

## ANALYSIS

I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The

Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28

U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and

42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis

in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his

claims.  Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails

to state a claim under the broadest reading.[1]

## II.   CONDITIONS OF CONFINEMENT

Plaintiff's testimony confirmed his written allegations concerning unsanitary

conditions during his incarceration in OPP.  Jackson was a pretrial detainee at all times

that form the basis of his claims in this case.  Regardless whether an inmate is a pretrial

detainee or a convicted prisoner, the standard of liability is the same for episodic acts or

omissions of jail officials of the type alleged in this case.  McCarty v. Zapata County,

243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing Gibbs v.

Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare v. City of Corinth, 74 F.3d 633, 636

(5th Cir. 1996)); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).

In Hare, the Fifth Circuit held

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to
parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452
F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir.
1994), and I have done so in this case.

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or Spears testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Jackson's allegations do not rise to the level of violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  Farmer, 511 U.S. at 847.  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof at a municipal actor disregarded a known or obvious consequence of his action." . . .  The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the

appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Jackson's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation. Jackson conceded in his testimony that he has suffered no serious physical injury or illness (only headaches, chest pains and stuffy nose) as a result of the allegedly unsanitary conditions.  Thus, he alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982).

Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Jackson's allegations about mold, dirty conditions or toilet overflows deliberately caused by other inmates fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional."). As the Fifth Circuit recently held in Brauner v. Coody, No. 12-314, 2015 WL 4393788, at *4-5 (M.D. La. July 17, 2015) (Africk, J.), no constitutional violation occurs when showers are cleaned twice a day with bleach, and the prisoner was provided a disinfectant spray bottle

for his personal use. The court specifically noted that failure of prison officials to maintain germ-free showers is not cruel and unusual punishment.

In two cases, the Fifth Circuit has held that extreme, <u>virtually</u> <u>permanent</u> conditions of cells that contained excrement and other filth violate the Eighth Amendment.  In <u>Harper v. Showers</u>, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in <u>Gates v. Cook</u>, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in <u>Davis</u>, the Fifth Circuit found <u>no</u> constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" <u>Davis</u>, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'"  <u>Id.</u> at 1006 (quoting <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)).  The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days. <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991)).

13

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Jackson to which he was exposed for about three months do <u>not</u> rise to the level of a constitutional violation. The conditions he experienced in OPP were neither virtually permanent nor an <u>extreme</u> deprivation of the type that might offend the Constitution, and he suffered no physical injuries or serious ailments as a result of any allegedly unsanitary conditions.

As to his allegation that the dirty conditions caused him to suffer headaches, chest pains and stuffy nose, unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury <u>resulting</u> <u>from</u> the challenged conditions." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir.), <u>cert. denied</u>, 114 S. Ct. 393 (1993) (emphasis added); <u>accord</u> <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 931 (1994).  Neither Jackson's medical records nor his testimony support the conclusion that any of the minor physical conditions he described were serious or even related to any unsanitary condition.

Any harm that Jackson may have suffered by the minor maladies he describes in this case were not serious and did not rise to the level of a constitutional violation.  <u>See,</u> <u>e.g.</u>, <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some bleeding not serious); <u>Griffin v. DeRobertis</u>, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious); <u>cf.</u> <u>Barker v. Brantley County</u>, 832 F. Supp. 346, 352 (S.D. Ga. 1993), <u>aff'd</u>, 19 F.3d 37 (11th Cir. 1994) (pneumonia is serious medical need).

Certainly, plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  Jackson's headaches, chest pains and stuffy nose do not rise to the level of serious medical needs for constitutional purposes.

Plaintiff must also allege an actual injury caused by defendants' acts.  See Winding v. Sparkman, 423 F. App'x 473, 474 (5th Cir. 2011) (citing Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999)) (failure-to-protect claim that does not allege any resulting injury does not state an Eighth Amendment violation); Lawson v. Stevens, 62 F.3d 394, 1995 WL 450100, at *1 (5th Cir. 1995) (citing Knight v. Caldwell, 970 F.2d 1430, 1432 (5th Cir. 1992)) (prisoner who "concedes that he was not harmed by the leg irons" with which he was shackled failed to state Eighth Amendment violation); Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990) (dismissal was proper when plaintiff alleged insufficient causal connection

between defendants' conduct and the claimed assault, and plaintiff did not allege constitutional harm); Auster Oil & Gas, Inc. v. Stream, 835 F.2d 597, 602 (5th Cir. 1988) (Section 1983 is designed to compensate persons for actual injuries caused by deprivation of constitutional rights); Jefferson v. City of Hazelhurst, 936 F. Supp. 382, 386 (S.D. Miss. 1995) ("To state a cause of action under Title 42 U.S.C. § 1983, the plaintiff must plead . . . that there exists a direct causal connection, . . . without intervening factors, between the deprivation and some injury to plaintiff.").

As to his claim of spoiled food, Jackson alleges he was served spoiled food, particularly oatmeal for breakfast, about five times a week, and that when he complained that the food was spoiled, he was told that the food was not spoiled. Certainly, food and water must be provided to prisoners. States violate the Constitution if they fail to provide prisoners with reasonably adequate food, water, clothing, shelter and sanitation. Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).

However, plaintiff's allegations in this case, while describing less than ideal conditions, are wholly speculative and conclusory and do not state a violation of plaintiff's constitutional rights. Constitutional standards require only that prison authorities provide an inmate with the basics in this regard, including "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999) (quoting Green v. Ferrell, 801 F.2d 765, 770 (5th Cir.

16

1986)).  Plaintiff has failed to set forth facts to establish a deprivation of or deviation

from this quality of food or water. The Constitution does not require that convicted

inmates be provided with particular consumables at a certain temperature or levels of

tastiness or with every culinary amenity which one may find desirable.  Robles v.

Coughlin, 725 F.2d 12, 15 (2d Cir. 1983); Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir.

1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (1979) (citing

Newman v. Alabama, 559 F. 2d 283, 291 (5th Cir. 1977)).

Jackson alleges no serious risk or harm in the constitutional sense. In fact, he

concedes that the only illness or other kind of physical problem he experienced as a result

of the conditions were minor headaches, chest pains and stuffy nose.  Thus, Jackson has

not alleged sufficiently serious harm resulting from these problems to satisfy either the

objective or subjective components required to state a claim for unconstitutional

conditions of confinement.  Under these circumstances, plaintiff has failed to state a

claim of constitutional magnitude, and his claim concerning the conditions of his

confinement must be dismissed for failure to state a cognizable constitutional claim under

Section 1983.

III.    NO LIABILITY OF THE SHERIFF

Jackson has named Sheriff Gusman as a defendant, although he has made no

allegations that Sheriff Gusman has been personally involved in any of the actions about

which he complains.  Thus, he appears to name the sheriff as a defendant based solely

upon his official responsibilities over his deputies and the parish jail facility.

"There is no respondeat superior liability under section 1983."  Eason v. Thaler,

73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927,

2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir.

2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant

cannot be held liable under Section 1983 pursuant to a theory of respondeat superior

simply because the persons allegedly responsible for plaintiff's injury, if any, were in his

employ or under his supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir.

1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699

F.2d 744, 746 (5th Cir. 1983).

To hold the sheriff liable, plaintiff must establish either that he was "personally

involved in the acts causing the deprivation of his constitutional rights or that a causal

connection exists between an act of [this defendant] . . . and the alleged constitutional

violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F.

App'x at 391; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be

met if there is no underlying constitutional violation."  Rios v. City of Del Rio, 444 F.3d

417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th

Cir. 2000)).  In the instant action, plaintiff has failed to establish either that the sheriff

was personally involved in any acts causing the deprivation of his constitutional rights

or that a causal connection exists between an act of the sheriff and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929. No such unconstitutional custom, usage or policy has been alleged in this case.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object. <u>Douglass v.

United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____31st____ day of August, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.